## In the Matter of Emma Renz, an Incompetent Person.

*Insane married woman—Liability of her estate for her maintenance at the asylum.*

The *expectant* estate of an insane married woman is liable for money advanced to provide for her proper medical treatment in the insane asylum; her husband being unable to pay for the same.

So *held*, where the mother of an insane daughter, whose husband was unable to pay for her treatment in the asylum, asked her husband (a step-father of the daughter) to advance the necessary means, promising that he should be re-imbursed out of a legacy given by her will to the daughter, and the step-father, in reliance upon such promise, made the required payments, and after the death of the mother was repaid by the guardian of the daughter, who was allowed for such payment by the probate court, which action is affirmed, the claim, under the circumstances, being an equitable one.

Appeal from Wayne. (Reilly, J.) Argued January 9, 1890. Decided January 17, 1890.

Appeal from allowance to guardian for maintenance, etc., of an insane person. Affirmed. The facts are stated in the opinion.

*John J. Speed*, for appellant.

*John G. Hawley*, for guardian.

[The points of counsel are discussed in the opinion.—Reporter.]

Grant, J. This is an appeal from the allowance to Jacob C. Mann, guardian of Emma Renz, an incompetent, of the sum of $485.41 for the care and maintenance

of said incompetent at the Asylum for the Insane at Kalamazoo. The stipulated facts are these, viz.:

Emma Renz was the wife of Henry Renz, and had been for some time prior to 1875. In March, 1875, she became insane, and her friends deemed it advisable to remove her to the asylum. She had no guardian at that time, nor until May, 1877. Her husband and John Baumeister on March 4, 1875, made a contract with said asylum to pay certain extra charges and expenses while at the asylum. Her husband was unable to pay such expenses. Mrs. Baumeister, the mother of Emma by a former husband, asked her husband, Mr. Baumeister, to advance the money necessary to send and keep Emma in the asylum, saying to him that she had made a will bequeathing Emma $1,000, and that he could be re-imbursed out of that legacy. Baumeister, expecting to be re-imbursed, paid the above amount for removing and keeping her at the asylum. Mrs. Baumeister died May 24, 1876, leaving a will containing the bequest, and making her husband executor. After the legacy became payable, Jacob Mann was appointed guardian, and filed his account as such guardian in the probate court, charging himself with $1,000, the amount of the legacy, and crediting himself with the above amount, which Baumeister had expended for the care of Emma at the asylum. The circuit court held that this amount was properly chargeable by Baumeister against the legacy, and that it was proper and lawful for said Mann, as guardian, to allow the same.

That the removal of Mrs. Renz to the asylum was dictated alike by necessity and humanity; that Baumeister and Mann, the guardian, acted in good faith; that the expenditure of the money was judicious, and for her benefit,—are not questioned. But it is contended on the part of the appellant that the claim of Baumeister is illegal, because the husband was primarily liable, and Mrs.

Renz, being insane, could neither contract nor assent to this transaction, and did not. But her husband was unable to pay, and she had only an expectancy from her mother. If appellant's position be correct, then an insane married woman, whose husband is unable to provide for her proper medical treatment for her malady, though possessed of an estate *in præsenti* or expectancy, must either become a public charge, or be left without assistance. In *Carstens v. Hanselman*, 61 Mich. 430, the Court say:

" Where a husband utterly deserts his wife, it would be a cruel rule for her if she cannot, in his absence at least, or in his presence, if he does not himself provide for her, make a binding agreement for any necessary, whether articles to be purchased or professional help, without becoming a public charge."

Still more cruel would be a rule that the friends of an insane married woman cannot advance money to procure for her medical attendance and care when the husband is utterly unable to do so, and in so doing bind her estate. Infants and insane persons are liable for necessaries furnished them, and the statute of this State expressly makes the estates of insane persons liable for their maintenance at the asylum.     Act No. 135, § 32, Laws of 1885.

*Alexander v. Miller*, 16 Penn. St. 219, cited by appellant, is not in point. In that case the wife of an insane man attempted to sell his property, not to provide medical care or necessaries, but to prevent the levy of an execution on his property. Of course she had no authority to do this. The question presented here did not arise in that case.

The husband of Mrs. Renz being unable to provide for her removal to the asylum, an act of the highest necessity, it would have been competent to use her own property for that purpose, if she had been possessed of any. Baumeister advanced the money, not as a gift, but

expecting eventually to be re-imbursed. A guardian was subsequently appointed, and received a thousand dollars, the property of Mrs. Renz. If a guardian had been appointed before she was sent to the asylum, and he had sent her there, and paid for it, would it be contended that he had no right to be re-imbursed out of her estate? Under the circumstances, we hold that the claim was an equitable one, and was properly allowed by the probate court.

The judgment must be affirmed, with costs.

The other Justices concurred.